**BAIS YAAKOV OF SPRING VALLEY,**
**on behalf of itself and all others**
**similarly situated, Plaintiff,**

v.

**HOUGHTON MIFFLIN HARCOURT**
**PUBLISHERS, INC., and Laurel**
**Kaczor, Defendants.**

**No. 13CV4577 (KMK)(LMS).**

United States District Court,
S.D. New York.

Signed Aug. 7, 2014.

Aytan Yehoshua Bellin, Bellin & Associates, White Plains, NY, Roger Furman, Roger Furman, Esq., Los Angeles, CA, for Plaintiff.

David Lender, Eric Shaun Hochstadt, Weil, Gotshal & Manges LLP, New York, NY, for Defendants.

### *ORDER*

LISA MARGARET SMITH, United States Magistrate Judge.

Plaintiff, a New York religious corporation, brings this case as a class action, asserting claims against Defendants, a publisher and one of its sales executives, for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and the New York General Business Law § 396–aa ("GBL"). Docket # 1, Complaint. In its Complaint, Plaintiff alleges that on November 15, 2012, "Defendants, jointly and severally, without Plaintiff's express invitation or permission, arranged for and/or caused a telephone facsimile machine, computer, or other device to send an unsolicited fax advertisement (the 'Fax Advertisement') advertising the commercial availability or quality of any property, goods, or services, to Plaintiff's fax machine ..." *Id.* ¶ 10. Plaintiff attaches a copy of the Fax Advertisement to the Complaint as Exhibit A. Plaintiff alleges that it "did not provide Defendants with express invitation or permission to send any fax advertisements. The Fax Advertisement was wholly unsolicited." *Id.* ¶ 11. Plaintiff further alleges that the "Opt–Out Notice" in the Fax Advertisement violates both the TCPA and GBL in several respects. *Id.* ¶¶ 13–14.

In addition, Plaintiff alleges that

16. Upon information and belief, Defendants have, from four years prior to the date of the filing of the Complaint in this action through the present, either negligently or willfully and/or knowingly sent and/or arranged to be sent well over five thousand (5,000) unsolicited and/or solicited fax advertisements advertising the commercial availability or quality of any property, goods, or services, to fax machines and/or computers belonging to thousands of persons all over the United States. Upon information and belief, those fax advertisements contained a notice identical or substantially similar to the Opt–Out Notice contained in the Fax Advertisement sent to Plaintiff.

17. Upon information and belief, Defendants have, from four years prior to the date of the filing of the Complaint in this action through the present, either negligently or willfully and/or knowingly sent and/or arranged to be sent well over five thousand (5,000) unsolicited fax advertisements advertising the commercial availability or quality of any property, goods, or services, to fax machines and/or computers belonging to thousands of persons throughout the United States. Upon information and belief, those facsimile advertisements contained an opt-out notice identical or substantially similar to the Opt–Out Notice contained in the Fax Advertisement sent to Plaintiff.

18. Upon information and belief, Defendants have, from three years prior to the filing of the Complaint in this action to the present, either negligently or willfully and/or knowingly sent and/or arranged to be sent thousands of unsolicited fax advertisements advertising the commercial availability or quality of any property, goods, or services, to fax machines and/or computers belonging to thousands of persons in New York. Upon information and belief, those facsimile advertisements contained an opt-out notice identical or substantially similar to the Opt–Out Notice contained in the Fax Advertisement sent to Plaintiff.

*Id.* ¶¶ 16–18. In its "Class Allegations," Plaintiff defines the three classes that it seeks to represent as follows:

Class A: All persons from four years prior to the date of the filing of the Complaint through the present to whom Defendants sent or caused to be sent at least one *solicited or unsolicited* facsimile advertisement advertising the commercial availability or quality of any property, goods, or services that contained a notice identical or substantially similar to the Opt–Out Notice in the Fax Advertisement sent to Plaintiff.

Class B: All persons from four years prior to the date of the filing of the Complaint through the present to whom Defendants sent or caused to be sent at least one *unsolicited* facsimile advertisement advertising the commercial availability or quality of any property, goods, or services that contained a notice identical or substantially similar to the Opt–Out Notice on the Fax Advertisement sent to Plaintiff.

Class C: All persons in the State of New York to whom, from three years prior to the date of the filing of the Complaint to the present, Defendants sent or caused to be sent at least one facsimile advertisement without having obtained express invitation or permission to do so and/or that contained a notice identical or substantially similar to the Opt–Out Notice on the Fax Advertisement sent to Plaintiff.

*Id.* ¶ 20 (emphases in original).

Currently before the Court is Plaintiff's motion to compel discovery on class issues, Docket # 25.[1] In sum, Plaintiff seeks to compel Defendants and their non-party fax broadcaster, Westfax, Inc., upon which

Plaintiff served a subpoena, *see* Bellin Decl. (Docket # 26) Ex. C, "to provide discovery on *all* fax ads sent by Defendants during the applicable four-year limitations period that contain an opt-out notice substantially similar to the notice on the fax ad sent to Plaintiff and/or were unsolicited, not just to provide discovery on the single fax ad that Defendant sent to Plaintiff, as Defendants urge." Mem. of Law in Supp. (Docket # 27) at 1 (emphasis in original).

Defendants' opposition to the motion, although broken down into three separate arguments, boils down to just one—that Plaintiff lacks standing to sue over, and seek discovery about, any other fax advertisements other than the one which it received. Mem. of Law in Opp. (Docket # 29). In making this argument, however, Defendant leapfrogs over Plaintiff's entitlement to discovery in aid of its future motion for class certification and advances arguments more properly addressed in the context of such a motion.[2]

Defendants concede that Plaintiff has Article III standing to sue Defendants in its own right based on its receipt of what Defendants call the "Criterion Fax," which advertises the "Criterion Online Writing Evaluation," and is appended as Exhibit A to the Complaint. See Mem. of Law in Opp. at 1–2 ("*Second,* Plaintiff's motion conflates its ability to seek class-wide discovery concerning the Criterion Fax that Plaintiff received—which Defendants have not-contested and have already provided discovery on—with Plaintiff's ability to seek discovery concerning *other*

---

1. In addition to consideration of the parties' written submissions, the Court held oral argument on the motion.

2. For example, Defendants note that they have been providing "class-wide discovery" concerning the single fax advertisement that Plaintiff received, which they refer to as the

"Criterion Fax." Mem. of Law in Opp. at 11–12. However, Defendants seem to overlook the fact that the Court has yet to determine whether the class to be certified in this case ought to be limited to recipients of the Criterion Fax.

alleged fax advertisements that Plaintiff does not claim to have received.") (emphases in original); *see also NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir.2012) (finding that the plaintiff had Article III standing to sue, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992): "a plaintiff must allege (1) an injury in fact (2) fairly traceable to defendants' actions that is (3) redressable by the requested relief to demonstrate Article III standing"), *cert. denied,* —— U.S. ——, 133 S.Ct. 1624, 185 L.Ed.2d 576 (2013). Plaintiff here has Article III standing to sue Defendants based on allegations that it suffered injury as a result of receiving an unsolicited fax advertisement from Defendants that lacked the opt-out notice required by both the TCPA and the GBL and that its injury is redressable by the award of statutory damages under those two statutes as well as injunctive relief.

However, Article III standing is distinct from the issue of "class standing," *i.e.*, standing to assert claims on behalf of others who received fax advertisements from Defendants which were solicited and/or unsolicited and contained "a notice identical or substantially similar" to the allegedly deficient opt-out notice in the fax advertisement received by Plaintiff. In *NECA–IBEW*, the Second Circuit held that the plaintiff, a health and welfare fund, had standing to assert class claims concerning certain mortgage-backed securities offerings from the defendants which the plaintiff did not itself purchase. The court held that the plaintiff had both Article III

standing and statutory standing to sue the defendants in its own right. *NECA–IBEW*, 693 F.3d at 158.[3] However, the court explained, "whether NECA has 'class standing'—that is, standing to assert claims *on behalf of* purchasers of Certificates from other Offerings, or from different tranches of the same Offering—does not turn on whether NECA would have statutory or Article III standing to seek recovery for misleading statements in those Certificates' Offering Documents." *Id.* (emphasis in original). Indeed, the court noted, "[T]he class standing analysis is different[.]" *Id.*

The Second Circuit further explained, "we have said that, to establish Article III standing in a class action for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis." *Id.* at 159 (internal quotation marks, alterations, and citation omitted). Moreover, "[t]he conclusion that a named plaintiff has a case or controversy does not automatically establish that she [or he] is entitled to litigate the interests of the class she [or he] seeks to represent, but it does shift the focus of examination from the elements of justiciability to the ability of the named representative to 'fairly and adequately protect the interests of the class.' (quoting Fed.R.Civ.P. 23(a))." *Id.* (alterations omitted) (quoting *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975)).[4] After examining Supreme Court case law on the issue of class standing, the Second Circuit concluded

---

**3.** Defendants do not argue that Plaintiff lacks statutory standing.

**4.** In a subsequent footnote, the Second Circuit cited additional Supreme Court and Circuit Court decisions which noted the distinction between the issue of standing and the

ability of the named plaintiff to assert the rights of absent class members—an issue to be resolved by a Rule 23 class certification determination. *NECA–IBEW*, 693 F.3d at 159 n. 10.

that the case law "stand[s] collectively for the proposition that, in · a putative class action, a plaintiff has class standing if he [or she] plausibly alleges (1) that he [or she] personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Id.* at 162 (internal quotation marks, alteration, and citations omitted). The Second Circuit held that the district court had erred in requiring the plaintiff to allege that its injuries were identical to those suffered by the putative class members. *Id.*[5]

Because Plaintiff in this case has satisfied the requirements for Article III standing, the issue of whether Plaintiff has standing to represent putative class members who received fax advertisements from Defendants other than the Criterion Fax, whether solicited or unsolicited, which also failed to include the opt-out notice required by the TCPA and GBL, is an issue to be decided on a motion for class certifi-

cation. *See, e.g., In re Frito–Lay N. Am., Inc. All Natural Litig.,* No. 12–MD–2413, 2013 WL 4647512, at *12 (E.D.N.Y. Aug. 29, 2013) ("*NECA–IBEW* thus instructs that, because plaintiffs have satisfied the Article III standing inquiry, their ability to represent putative class members who purchased products plaintiffs have not themselves purchased is a question for a class certification motion.") (collecting cases).[6]

Aside from the issue of standing, Defendants provide no other reason why Plaintiff should be denied the discovery that it seeks through this motion to compel.[7] In deciding the issue of whether Plaintiff is entitled to the discovery which it seeks, the Court finds that such discovery would be relevant to Plaintiff's future motion for class certification. *See, e.g., Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 571 (2d Cir.1982) ("[T]here can be no doubt that it is proper for a district court, prior to certification of a class, to allow discovery and to conduct hearings to determine whether the prerequisites of Rule 23 are satisfied.").[8]

---

**5.** Defendants in this case conflate the issues of Article III standing and class standing, claiming that "what enables Plaintiff to have constitutional standing to assert claims on behalf of a putative class is whether they share a common source of injury." Mem. of Law in Opp. at 17.

**6.** At oral argument, Defendants cited the recent Second Circuit decision of *DiMuro v. Clinique Labs., LLC,* 572 Fed.Appx. 27 (2d Cir.2014), in support of their argument that Plaintiff lacks class standing. However, *DiMuro* merely reiterates the holding of *NECA–IBEW* and does not alter the Court's conclusion herein.

**7.** Defendants' counsel represented at oral argument that other objections have been raised in Defendants' written responses to Plaintiff's discovery requests, but those responses have not been provided to the Court in the context of this motion. Thus, this Order addresses

only Defendants' objection on the basis of standing.

**8.** Defendants argue that "a litigant does not get discovery to see if it has a claim, and that Plaintiff was only entitled to discovery of other fax advertisements if the allegations in the Complaint were sufficient to support such a request." July 11, 2014, Letter (Docket # 36) at 1 (emphasis in original). Defendants challenge the allegations in paragraphs 16 and 17 of the Complaint, made "upon information and belief," that over 5,000 unsolicited and/or solicited fax advertisements with the deficient opt-out notice were sent by Defendants. Mem. of Law in Opp. at 8. Defendants argue, "Plaintiff's conclusory allegation is insufficient to allow this Court to 'draw the reasonable inference' that Plaintiff received fax advertisements *other* than the Criterion Fax such that Plaintiff should be permitted to sue over, and seek discovery concerning, those

Accordingly, Plaintiff's motion is granted.[9]

## CONCLUSION

For the foregoing reasons. Plaintiff's motion to compel discovery on class issues, Docket # 25, is granted. Defendants are hereby directed to serve their responses to Plaintiff's discovery requests, and non-party Westfax, Inc. is hereby directed to serve its response to Plaintiff's subpoena, within thirty (30) days of the date of this Order.

Plaintiff is hereby directed to serve a copy of this Order on non-party Westfax, Inc., and shall file appropriate proof of service.

**SO ORDERED.**

faxes." *Id.* (emphasis in original); *see also id.* at 10 ("[B]ecause Plaintiff has not alleged an injury with respect to faxes other than the Criterion Fax, it only has standing to assert a TCPA claim based on, and to seek discovery concerning, the Criterion Fax."). However, as explained above, a named plaintiff's injury does not have to be identical to that of the putative class members in order for the named plaintiff to have class standing. *NECA–IBEW*, 693 F.3d at 162. Moreover, the issue of class standing is not the same as the issue of whether or not Plaintiff has succeeded in stating a claim.

Given that the identity of the parties to whom other fax advertisements were sent by, or on behalf of, Defendants is information that is uniquely within Defendants' and Westfax's knowledge, Plaintiff could only make its allegations in paragraphs 16–17 of the Complaint "upon information and belief." Hence, these allegations are sufficient to support the requests for discovery concerning other fax advertisements, which discovery is relevant to the future determination of the issue of class certification.

9. Although the Court does not have before it the written submissions made to Judge Davison on the motion to compel in *Bais Yaakov of Spring Valley v. Richmond, The Am. Univ. in London, Inc.*, 13CV4564 (CS)(PED), another TCPA case involving the same Plaintiff and Plaintiff's counsel, the Court nonetheless agrees with his determination. In granting a motion to compel a response to a subpoena served on the non-party which was responsible for sending out fax advertisements on behalf of the defendant, Judge Davison pointed out to counsel for the non-party, "[Y]ou're asking me to declare now that those unknown number of faxes, fax templates, whatever, and those unknown recipients have nothing to do with this case .... it seems to me that you're seeking a preemptive ruling now on an issue that really ought to be determined down the road after discovery." July 2, 2014, Letter (Docket # 34), Ex. A at 17. He further noted that the non-party was "seeking sort of a predictive ruling about a determination that's going to be made down the road, and it seems to me that my role here is a much more limited one, which is to determine whether the subpoena served on your client ... seeks relevant documents which may lead to the discovery of admissible evidence or evidence that's relevant to a class certification application, and it's hard for me to see how it isn't." *Id.* at 17–18. Defendants contend that "key arguments that Defendants have fully briefed in this case were neither made nor addressed by the Court in the *Richmond* case and, thus, that ruling should not apply here." July 11, 2014, Letter (Docket # 36) at 1. However, having reviewed all of the key arguments made by Defendants in this case, the Court concludes that, as in *Richmond*, Defendants here are seeking a "predictive ruling" about class standing, an issue to be determined on a future motion for class certification.